UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

**Chambers of**
**Douglas R. Miller**
**United States Magistrate Judge**

**101 West Lombard Street**
**Baltimore, Maryland 21201**
**MDD_DRMChambers@mdd.uscourts.gov**
**(410) 962-7770**

February 25, 2026

LETTER TO ALL COUNSEL OF RECORD

Re:  *Jason M. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
   Civil No. 25-0358-DRM

Dear Counsel:

On February 5, 2025, Plaintiff Jason M. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301. I have considered the record in this case and the parties' briefs. ECF Nos. 10, 17, 19, 21. I find that no hearing is necessary. *See* Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REMAND the Commissioner's decision. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefit benefits ("DIB") and a Title XVI application for Supplemental Society Income Benefits ("SSI") on April 11, 2022, alleging a disability onset of April 1, 2019. Tr. 258-264. Plaintiff's claims were denied initially and on reconsideration. Tr. 122-131. On June 28, 2024, an Administrative Law Judge ("ALJ") held a hearing. Tr. 21-41. Following the hearing, on July 16, 2024, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 21-41. On October 24, 2024, the Appeals Council denied Plaintiff's request for review, Tr. 7-13, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

---

[1] Plaintiff filed this case against Michelle King, the Acting Commissioner of Social Security on February 5, 2025. ECF No. 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

## II.   THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since April 1, 2019, the alleged onset date." Tr. 26. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "bipolar I disorder, generalized anxiety disorder, major depressive disorder, post-traumatic stress disorder, and polysubstance abuse." Tr. 27. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 27. The ALJ also determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is able to understand, remember, and carry out simple instructions for two-hour periods. He can use judgment to make simple work-related decisions. He cannot perform work requiring specific rate production, such as assembly line work or work that requires hourly quotas. He can have occasional interaction with coworkers and supervisors, but no tandem tasks. He cannot have direct interaction with the public. He can tolerate occasional changes in a routine work setting.

Tr. 29. The ALJ determined that Plaintiff is unable to perform any past relevant work but could perform jobs that existed in significant numbers in the national economy, such as grounds maintenance worker, hand packager, and industrial cleaner. Tr. 35-36. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 36.

## III.   LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.

Jason M. v. Bisignano
Civil No. 25-0358-DRM
February 25, 2026
Page 3

1966). It is "more than a mere scintilla but may be somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.   ANALYSIS

Plaintiff argues that the ALJ's RFC and step-five findings are unsupported by substantial evidence because the ALJ posed an inadequate hypothetical to the vocational expert by including an undefined limitation: "specific rate production, such as assembly line work or work that requires hourly quotas", rendering the decision unreviewable. ECF No. 17 at 7-8. Plaintiff cites *Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019) to support the argument that remand is warranted where a limitation proposed by the ALJ in his hypothetical is not defined by common meaning, regulation, or the Dictionary of Occupational Titles ("DOT"). *Id.* Plaintiff further argues that mere examples, such as "assembly line work" or "hourly quotas" do not define the scope of the limitation or permit meaningful review, and therefore remand is warranted. *Id.*

The Commissioner responds that Plaintiff's sole challenge to the step-five finding fails because the "specific rate production" limitation is commonly understood, adequately clarified by the examples given, and supported when the ALJ's decision is read as a whole, making it susceptible to meaningful judicial review. ECF No. 19 at 1. The Commissioner also argues that Plaintiff forfeited the issue by failing to seek clarification at the hearing[3] and that the DOT and case law recognize "production rate pace" as a term of art. *Id.* at 9. Plaintiff replies that the Commissioner does not cure the core error, an inadequate hypothetical infecting the RFC and step-five findings, and maintains that the ALJ failed to provide reasons as required by regulations. Plaintiff simply directs the Court back to the arguments in the opening brief and requests reversal or remand. ECF No. 21.

The Court concludes that the ALJ's decision is not supported by substantial evidence. "Whether the alleged ambiguity arose in the RFC assessment or the hypothetical is a distinction without a difference because the ALJ used the same term in the hypothetical and in the RFC discussion." *Trena Sue Y. v. Kijakazi*, No. DLB-20-1075, 2021 WL 4034264, at *3 (D. Md. Sept. 3, 2021) (citing *Ursula G. v. Berryhill*, No. SAG-18-1841, 2019 WL 2233978, at *2 (D. Md. May 23, 2019)). Courts look "to an existing administrative record and [ask] whether it contains 'sufficient evidence' to support the agency's factual determinations" when reviewing for

---

[3] The Commissioner contends that Plaintiff forfeited any challenge to the language used in the hypothetical posed to the vocational expert by failing to raise the issue during the expert's testimony. In support, the Commissioner relies exclusively on decisions from the Middle District of North Carolina, which he cites without further explanation as to how their reasoning applies to the circumstances of this case. Those cases are not binding on this Court, and the Court has been unable to identify any controlling authority adopting such a forfeiture rule.

*Jason M. v. Bisignano*
Civil No. 25-0358-DRM
February 25, 2026
Page 4

substantial evidence. *Trena Sue Y.*, 2021 WL 4034264, at *2 (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citation omitted)). Agency conclusions must be stated in terms the Court can understand for the Court to conduct substantial evidence review.

In *Thomas*, the Fourth Circuit found that an ALJ's RFC limitation excluding work that "require[d] a production rate or demand pace" prevented meaningful judicial review because the ALJ failed to explain what those phrases meant. With "production rate" and "demand pace" left undefined, the court concluded that it was "difficult, if not impossible" to determine whether the RFC finding was supported by substantial evidence. Without deciding whether the RFC itself was substantively correct, the court remanded for "a clearer window into" the ALJ's reasoning. *Thomas,* 916 F.3d at 312 n.5. The panel emphasized that, on remand, the ALJ must clarify how long and under what conditions the claimant could sustain focus and remain on task. *Id.* And although *Thomas* identified other grounds for remand, later Fourth Circuit decisions have relied solely on the failure to define ambiguous RFC terms as sufficient justification for reversal. In *Trena Sue*, the court likened the use of the phrase "fast paced produced" to the terms in *Thomas*, both in "form and defect." *Trena Sue,* 2021 WL 4034264 at *4.

Additionally, in *Linger v. Comm'r of Soc. Sec.*, No. 22-2192, 2025 WL 40548 (4th Cir. Jan. 7, 2025), the Fourth Circuit held that the phrase "no fast paced production requirements such as assembly line work or piecemeal quotas," which is quite similar to the phrase "specific rate production, such as assembly line work or work that requires hourly quotas" used here, was not an adequate description of the limitation because "though the ALJ provided some examples, there [was] uncertainty as to the intended scope of the limitation, and such uncertainty preclude[d] meaningful review as to whether there is a logical bridge between the evidence in the record and the ALJ's conclusion." *Linger*, 2025 WL 40548, at *5 (citing *Perry v. Berryhill*, 765 F. App'x 869, 872 (4th Cir. 2019) (finding the ALJ failed to offer a definition for his RFC determination of "non-production oriented work setting" and that "[a]s a result, we remain uncertain as to what the ALJ intended ... and cannot meaningfully assess whether there is a logical bridge between the evidence in the record and the ALJ's conclusion") (internal quotation marks omitted)).

The term used here, "specific rate production" is analogous to the terms used in *Thomas* and *Linger*, in that it is not defined by regulation and is susceptible to varying interpretations.

The Commissioner points to the appearance of the phrase "production rate pace" in the definition of "light work" in Appendix C to the DOT and argues that "[t]his shows 'production rate pace' is a term of art describing constant movement or engagement—for example, assembly line work." ECF No. 19 at 10.

As an initial matter, the Court is not persuaded that the phrase "production rate pace" is in fact a term of art with unambiguous meaning solely because it appears in the definition of "Light Work" in DOT Appendix C. Appendix C states, in relevant part:

> L-Light Work - Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects.

> Physical demand requirements are in excess of those for Sedentary Work. *Even though the weight lifted may be only a negligible amount, a job should be rated Light Work*: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) *when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.*

U.S. Dep't of Labor, *Dictionary of Occupational Titles*, Appendix C - Components of the Definition Trailer, 1991 WL 688702 (4th ed. 1991) (emphasis added).

The Court does not read this passage to mean that "production rate pace" means exactly and exclusively "the constant pushing and/or pulling of materials." Rather, it seems to mean that where a job that would otherwise be classified as sedentary requires working at a "production rate pace"—whatever that means—*and* working at that rate *in that job* results in the constant pushing and pulling of materials, the job should be classified as "Light Work." The Court notes that the term "production rate pace" is defined nowhere in this definition or anywhere else in the DOT and its appendices.

Even if the specific term "production rate pace" were rendered unambiguous by its inclusion in DOT Appendix C, that is not the term at issue in the present case: "specific rate production." Indeed, the ambiguity in the present case is compounded by the ALJ's use of the qualifier "specific," which offers no discernible benchmark. It merely raises the question: specific to what metric, standard, or expectation? Without any explanation for "specific," the Court cannot determine the scope of the restriction the ALJ intended to impose, which prevents meaningful review.

The Commissioner does not argue the regulations, the DOT, or the ALJ's decision define "specific rate production." *See Thomas*, 916 F.3d at 312. As in *Trena Sue*, the Commissioner does not explain "how the reason for plaintiff's limitation to work requiring no [specific rate production] clarifies any ambiguity in what constitutes [specific rate production]." *Trena Sue Y.*, 2021 WL 4034264, at *4. The Court agrees with the Plaintiff that the ALJ's use of the examples "assembly line work" or "hourly quotas" do not define the scope of the limitation or permit meaningful review. Like in *Thomas*, *Linger*, and *Trena Sue*, because the ALJ's utilization of "specific rate production" does not provide "enough information to understand what th[ ]e term[ ] mean[s]," it is difficult for the Court to ascertain whether the ALJ's decision was supported by substantial evidence. *See Thomas*, 916 F.3d at 311-12. Remand is therefore appropriate.

### V.     CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REMANDED.

*Jason M. v. Bisignano*
Civil No. 25-0358-DRM
February 25, 2026
Page 6

    Despite the informal nature of this letter, it should be docketed as a Memorandum Opinion. A separate implementing Order follows.

                                      Sincerely,

                                          /s/

                                      Douglas R. Miller
                                      United States Magistrate Judge